1   DIEMER & WEI, LLP
    Kathryn S. Diemer, SBN 133977
2   Susan B. Luce, SBN 120843
    Paul J. Johnson, SBN 320642
3   55 S. Market Street, Suite 1420
    San Jose, CA 95113
4   408-971-6270
    kdiemer@diemerwei.com
5
6   *Attorneys for Loraine Wong,*
    *Kendall Ng and Mark Ng*
7
                    UNITED STATES BANKRUPTCY COURT
8
                    NORTHERN DISTRICT OF CALIFORNIA
9
                        SAN FRANCISCO DIVISION
10

11

12  In re:                              Case No. 19-31024 HLB

13  RICHARD TOM, aka Rich Tom,          Judge: Hon. Hannah L. Blumenstiel

14                                       Chapter 7
            DEBTOR
15                                       Adv. Proc. No.: 19-03065

16  _____

17  LORAINE WONG, KENDALL NG and        **DECLARATION OF KATHRYN S. DIEMER**
                                        **REGARDING DIRECTLY**
18  MARK NG,                            **CONTRADICTORY STATEMENTS ABOUT**
                                        **GREEN OASIS LIMITED PARTNERSHIP'S**
19                          Plaintiffs, **CONTROL AND MANAGEMENT**
                                        **RELEVANT TO ORDER TO SHOW CAUSE**
20  v.
                                        Date: 9/15/2022
21  RICHARD TOM,                        Time: 2:00 P.M.

22                          Defendant.  TELEPHONIC OR VIDEO
                                        APPEARANCES ONLY
23

24

25

26

27

28

I, Kathryn S. Diemer, declare as follows:

1. I am counsel for Plaintiffs in the above captioned case.

2. Over the last two days I have become aware that Mr. Richard Tom, Ms. Kenesha Fudge, and Green Oasis Limited Partnership [hereinafter cited as "GOLP"] are making directly contradictory statements about who controls GOLP to different courts. I believe that I am obligated to notify the Court of this inconsistency as an officer of the Court.

3. On this Monday, September 12, 2022, I took the second half of the deposition of Mr. Richard Tom, wherein he produced documents identified by the deposition notice. During the deposition Mr. Tom specified, as he has throughout the case, that he has no involvement with GOLP, and that Ms. Fudge is the managing member of Pacific Golden Asia, LLC [hereinafter cited as "PGA"] which is the managing partner of GOLP.

4. Mr. Tom produced as one of the documents for the deposition on September 12, 2022, the lease between Massawa Restaurant, owned by Asmerom Gehbremichael [hereinafter cited as "Massawa"] and God's Grace Irrevocable Trust [Hereinafter cited as "GGIT"], of which Debtor is the Trustee. There were significant discussions about the lease during the deposition, because Plaintiff is attempting to identify the rents received by GOLP for the various apartments and the restaurant in order to determine the information necessary to calculate its damages in this matter.

5. During the deposition Mr. Tom testified that GOLP is in litigation with Massawa in *Green Oasis Limited Partnership v. Asmerom Ghebremichael et al*., San Francisco County Superior Court Case Number: CGC20586069. [Hereinafter cited as "Massawa Case."] Mr. Ray, who is Mr. Tom's attorney in this matter, is also the attorney for the Massawa Case. Mr. Tom was unclear about how GOLP was suing on a lease in which GGIT was named, but testified clearly, as he has throughout this matter, that he is not involved with GOLP, that Ms. Fudge is the partner and knowledgeable person for GOLP.

6. After returning to my office yesterday, I called counsel for Massawa, to determine if he could provide the trial brief, and witness list for the upcoming trial, currently scheduled for September 26, 2022. He did so. Once I reviewed the trial brief, and witness list, it

**DECLARATION OF KATHRYN DIEMER**

| | |
|---|---|
| 1 | became clear that the statements in the trial brief, and witness list, are directly apposite to |
| 2 | the statements made by Debtor in this case. The following paragraphs set these out. |
| 3 | 7. On March 21, 2022, Plaintiffs attempted to take the deposition of the 30(b)(6) witness of |
| 4 | GOLP on the topics of GOLP's operating, ownership of property, and relationship with |
| 5 | other entities to whom Plaintiffs allege that Richard Tom has directed fraudulent transfers, |
| 6 | including the entity called Pacific Golden Asia ("PGA"). See Exhibit 1. When Ms. |
| 7 | Fudge knew no information on these topics, Plaintiffs wrote to the Court, per the Court's |
| 8 | discovery procedures, and the Court invited GOLP, PGA, and Richard Tom to respond to |
| 9 | Plaintiffs' letter. |
| 10 | 8. GOLP responded and stated Ms. Fudge was the only person competent to testify as a |
| 11 | 30(b)(6) witness of GOLP. GOLP's attorney wrote: "As to GOLP, my understanding is |
| 12 | that Ms. Fudge manages GOLP through PGA and that PGA took over management of |
| 13 | GOLP as the general partner in 2016 from Mr. Justin Tom." Ex. 2, GOLP Letter (Doc. |
| 14 | No. 71)(bottom of page 1)(emphasis added). GOLP further wrote: "Ms. Fudge is the |
| 15 | PMK for GOLP and was not improperly designated. Ms. Fudge has identified herself as |
| 16 | the PMK for GOLP.… Ms. Fudge testified that she handles the leases, ensures rent is |
| 17 | paid, pays the bills, and is the contact person for repairs, and is otherwise the person |
| 18 | currently responsible for the categories listed on GOLP's subpoena." Id. at Bottom of |
| 19 | Page 3. |
| 20 | 9. The Court relied on this statement by GOLP's counsel when it ordered GOLP and PGA to |
| 21 | designate a further competent witness and denied without prejudice Plaintiffs' request to |
| 22 | file a motion for sanctions against GOLP and/or PGA. See Doc. No. 78 (noting that the |
| 23 | Court based its ruling on its consideration "of the written submissions it has received"). |
| 24 | 10. In the trial brief for the Massawa Case, GOLP represented to the San Francisco Superior |
| 25 | Court that: "Plaintiff [i.e. GOLP] intends to call Richard Tom as a witness. Richard Tom |
| 26 | acts as the Property's manager and is Plaintiff's agent. Richard Tom will testify as |
| 27 | follows: Plaintiff is the owner of the Property. On July 15, 2015, Defendant entered into a |
| 28 | commercial lease agreement whereby Defendant leased the Premises for ten years, with |

two ten-year options ("Agreement" or "Lease"). (Plaintiff's Trial Exhibit ("Exh.") 1.) According to the Lease, the lessor was "Gods Grace Irrevocable Trust or to be determined (TBD) upon discretion of appointed trustee." (Exh. 1.) Shortly after executing the Lease, God's Grace Irrevocable Trust assigned the Lease to Plaintiff [GOLP]" Ex. 3 at 2: 9-12. GOLP further represented: "***For the purposes of clarity, God's Grace Irrevocable Trust is also the managing partner of Plaintiff Green Oasis, LP.***" [Emphasis Added.] See Exhibit 3 at 2: 28(fn. 1).

11. GOLP previously represented to this Court that only Kenesha Fudge had the knowledge to appear as the 30(b)(6) witness on topics that included:

> 2. GOLP's ownership of any property, or interest in property....4. GOLP's transfer of any property from 2006 to present....5. GOLP's [] relationship with Richard Tom since 2006. ...11. GOLP's records related to property of any real property which it owns or has managed since 2006, including but not limited to contracts for property management, payments for property management, scope and tasks of management, changes in property management, costs of property management, leases, efforts taken to lease property, relationships with realty companies, lawsuits and/or any other record related to any real property which GOLP owns or manages."

Ex. 1, Subpoena, 5-6 of unpaginated PDF.

12. GOLP's representation to this Court (Doc. 71., Ex. 1) that only Kenesha Fudge, and not Richard Tom, had any knowledge of these topics is diametrically different than GOLP's representations to the San Francisco Superior Court. GOLP is telling the San Francisco Superior Court that Richard Tom, the Trustee, and sole person associated in any way with GGIT, is the person most knowledgeable for GOLP. The witness list for GOLP, in the Massawa Case lists Richard Tom, not Kenesha Fudge as the person knowledgeable about the financial dealings of GOLP. Exhibit 4. GOLP's Trial Brief specifies that GGIT is the managing partner of GOLP, not PGA. See Exhibit 3.

13. GOLP has told this Court that PGA is its managing Partner (See Exhibit 2, quoted above in paragraph 8). GOLP has repeatedly stated that only Kenesha Fudge has knowledge about GOLP, and is the only person who can testify as the person most knowledgeable on behalf of GOLP.

Declaration of Kathryn Diemer
Case: 19-05083   Doc# 156   Filed: 09/14/22   Entered: 09/14/22 17:53:09   Page 4 of 35

1  14. I felt that the Court should have the full information if the Court makes any further orders

2      regarding discovery, GOLP, PGA, Richard Tom, or any other matter.

3      Executed September 14, 2022 at San Jose, California.

4

5                                    By:    /s/ Kathryn S. Diemer

6                                           Kathryn S. Diemer

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4
Declaration of Kathryn Diemer

# EXHIBIT 1

# UNITED STATES BANKRUPTCY COURT

**Northern** _____ District of _____ **California**

In re **Richard Tom** _____

Debtor

*(Complete if issued in an adversary proceeding)*

**Mark Ng, Loraine Wong, and Kendall Ng** _____

Plaintiff

v.

**Richard Tom** _____

Defendant

Case No. **19-31024 HLB** _____

Chapter **7** _____

Adv. Proc. No. **19-3065 HLB** _____

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: **Green Oasis, L.P.** _____

*(Name of person to whom the subpoena is directed)*

☐ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE Diemer & Wei, LLP, 55 S. Market Street, Suite 1420, San Jose CA | DATE AND TIME **Pacific Time** |
|---|---|
| https://us02web.zoom.us/j/88438406657   Passcode: 996556 | **2/16/22**      **9:30 am** |

The deposition will be recorded by this method: Stenographic and videotape.      **Meeting ID: 884 3840 6657**

☐ *Production*: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See attached Requests for Production of Documents.

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 2/8/2022 _____

CLERK OF COURT

OR

_____
Signature of Clerk or Deputy Clerk

_____
Attorney's signature

The name, address, email address, and telephone number of the attorney representing *(name of party)* **Plaintiffs Mark Ng, et al.** _____ , who issues or requests this subpoena, are:

**Paul J. Johnson, 55 South Market Street, Suite 1420, San Jose, CA 95113.  pjohnson@diemerwei.com, 408-971-6270**

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: __Green Oasis, LP_____
on *(date)* _2/8/2022___ .

☒ I served the subpoena by delivering a copy to the named person as follows: _by email to: GOLP and PGA's_
_____ counsel, Mr. Charlie W. Yu at cyu@essentiallawgroup.com and Defendant's Counsel at mmetzger@belvederelegal.com
_____ on *(date)* _2/8/2022_____ ; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _2/8/2022_____

/s/ Paul Johnson
_____
*Server's signature*

Paul Johnson
_____
*Printed name and title*

pjohnson@diemerwei.com; 55 S. Market Steret, San jose, CA 95113
_____
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
        (i) is a party or a party's officer; or
        (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
    (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
    *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
        (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
        (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
    *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
        (i) fails to allow a reasonable time to comply;
        (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
        (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
        (iv) subjects a person to undue burden.
    *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
        (i) disclosing a trade secret or other confidential research, development, or commercial information; or

        (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
        (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
        (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
    *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
        (i) expressly make the claim; and
        (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

---

## EXHIBIT A – Topics for Rule 45 Deposition

Green Oasis Limited Partnership shall produce to testify on its behalf one or more officers, directors, or managing agents, or designate other persons who consent to testify on their behalf, in each case who have knowledge of the Topics of Examination set forth below. The individual(s) designated shall testify as to matters known or reasonably available to Green Oasis Limited Partnership.

## DEFINITIONS

The words and phrases used in these Requests shall have the meanings ascribed to them under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of California. In addition, the following terms shall have the meanings set forth below whenever used in any Request.

1.      "You" or "Your" means Green Oasis Limited Partnership, and employees, agents, representatives or persons acting on Green Oasis Limited Partnership's behalf, including Green Oasis Limited Partnership's attorneys.

2.      "Plaintiffs" means and refers to Mark Ng, Loraine Wong, and Kendall Ng and their employees, agents, representatives, or persons acting on their behalf, including their attorneys.

3.      "Communication" or "Communications" mean any contact, transfer, or transmittal in any form, formal or informal, at any time or place, under any circumstances, in any manner, whereby information, impressions, or understandings of any nature is or are transmitted or transferred, and shall include, without limitation, any Documents containing, constituting, reflecting, memorializing, referring, or relating to any such contact, transfer, or transmittal.

4.      "Document" and "Documents" are defined in the most comprehensive and inclusive sense permissible under the Federal Rules of Civil Procedure and the Federal Rules of Evidence and shall mean any written or graphic matter or other means of preserving thought or expression, and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, but not limited to, email, correspondence, memoranda, notes, messages, letters, telegrams, teletypes, telefaxes, bulletins, interoffice and intraoffice telephone calls, diaries, chronological data, minutes, books, reports, studies, summaries, pamphlets, bulletins, printed matter, charts, ledgers, invoices, work sheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, magazine or newspaper articles, blog entries, instant messages, text messages, social media posts or messages, voicemails, releases (and any and all drafts, alterations and modifications, changes and amendments of any of the foregoing), graphic or aural records or representations of any kind (including microfilm, videotape, recordings, and motion pictures) and electronic, mechanical, computer, or electronic recordings or representations of any kind (including without limitation tapes, hard drives, cassettes, discs, and records). The term "Document" specifically includes all

computer generated and computer-stored information, including electronic mail and information stored as "back-up."

5.     "Relating to," "Relate to," and "Related to" mean regarding, concerning, constituting, comprising, reflecting, evidencing, representing, supporting, contradicting, referring to, stating, describing, recording, noting, embodying, containing, mentioning, studying, analyzing, discussing, evaluating, summarizing, or relevant to. These terms are defined so as to reach all matters within the scope of discovery under the Federal Rules of Civil Procedure, including all information that may be inadmissible at trial but is reasonably calculated to lead to the discovery of admissible evidence.

6.     Throughout these Discovery Requests, the singular shall include the plural and vice versa; the terms "all" or "any" shall mean "any and all;" the term "either" shall mean "either or both;" the terms "each" or "every" shall mean "each and every;" the terms "and" or "or" shall be both conjunctive and disjunctive so as to capture the maximum amount of information or number of Documents.

## Topics of Examination

1.     Green Oasis Limited Partnership's [hereinafter GOLP] acquisition of the property located at 532-536 Green Street, San Francisco, CA.

2.     GOLP's ownership of any property, or interest in property.

3.     GOLP's transfer of any interest in GOLP, including partnership transfer from 2006 to present.

4.     GOLP's transfer of any property from 2006 to present.

5.     GOLP'S transfer of interest to PACIFIC GOLDEN ASIA.

6.     GOLP's relationship with Pacific Golden Asia since 2006.

7.     GOLP' records related to Pacific Golden Asia since 2006.

8.     GOLP's records relationship with Richard Tom since 2006.

9.     GOLP's records related to its relationship with Richard Tom since 2006.

10.    GOLP's property management of any real property which it owns or has managed since 2006.

11.    GOLP's records related to property of any real property which it owns or has managed since 2006, including but not limited to contracts for property management, payments for property management, scope and tasks of management, changes in property management,

costs of property management, leases, efforts taken to lease property, relationships with realty companies, lawsuits and/or any other record related to any real property which GOLP owns or manages.

12.     GOLP's relationship with Justin Tom since 2006.

13.     GOLP's records related to Justin Tom, including but not limited to employment, scope of employment, lawsuits over management, payments to Justin Tom or anyone whom Justin Tom directed payment to, and/or any communications with Justin Tom.

14.     GOLP's partnership documents, partner meetings, partner communications, emails, tax documentation, profit and loss records, financial records, financial reporting to partners, tax preparers, accountants, bookkeepers, or other financial recordkeepers.

15.     Any monies paid to Justin Tom by GOLP

16.     GOLP's records of any monies paid to Justin Tom by GOLP or anyone.

17.     Any monies paid to Richard Tom by GOLP.

18.     GOLP's record of any monies paid to Richard Tom by GOLP.

19.     Any monies paid to Garrett Tom by GOLP.

20.     GOLP's record of any monies paid to Garrett Tom by GOLP.

21.     GOLP's record of any monies paid on behalf of Richard Tom by GOLP, including any payments for Richard Tom's household expenses, legal expenses, boats, cars, medical expenses, professional expenses, payments to Mr. Wiseman, payments for bookkeepering, accounting, tax preparation or payment of any other type.

22.     GOLP's records of any monies paid on behalf of Richard Tom by GOLP, including any payments for Richard Tom's household expenses, legal expenses, boats, cars, medical expenses, professional expenses, payments to Mr. Wiseman, payments for bookkeepering, accounting, tax preparation or payment of any other type.

23.     GOLP's records of any monies paid on behalf of Garrett Tom by GOLP, including any payments for education, school, health care, books, daily expenses of any kind, housing, summer camp, or any payment of any kind.

24. GOLP' records of any monies paid to Winnie Jiang, including any payments for household expenses, legal expenses, boats, cars, medical expenses, professional expenses, payments for bookkeeping, accounting tax preparation or payment of any type.

25. GOLP's financial records, including bank records, accounts receivable, accounts payable, check book or any other financial record.

26. GOLP's payment of any kind to anyone.

27. GOLP's relationship to the Moon Trust, including but not limited to any payments, receipt of any monies, communications, emails, or any other thing.

28. GOLP's relationship with any other member of any business or person related to or involved with Richard Tom, Winnie Jiang, Garrett Tom, or any other relation of Richard Tom of any kind.

**Attachment - Request for Production to Green Oasis Limited Partnership**

General Instructions

1.  DOCUMENT means a writing and refers to handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording and every other means of recording upon any tangible thing, including, but not limited to, videotapes, magnetic, read-only memory, or optical recordings, computer disks, and electronic mail messages and any metadate related to any such document as described herein. The term E-MAIL, or COMPUTER FILE means any information that has been prepared, retained, or stored, using magnetic, optical, read-only memory, or electronic means, in or on: (1) active computer disks or tapes; 2) backup or archival disks or tapes; 3) hard disks; 4) floppy disks, 5) personal computers connected to a local area network, but which still maintain their own working files on internal hard disks; 6) notebook, or personal computers or any type of portable memory evidence used to store digitized information; 7) removeable hard disks, or other memory storage devices such as memory sticks, telephones with memory, 8) electronic mail and any memory device which stores electronic mail; 9) all directors and all subdirectories and metadata. E-MAIL or COMPUTER FILE includes deleted information that can "undeleted" because the information was prepared, retained, or stored in more than one location, as described above, through the creation of backup copies. E-MAIL or COMPUTER FILE also includes information that supposedly has been deleted from a directory which may be retrievable because although the directory no longer shows that the E-MAIL or COMPUTER FILE exists, the information itself may have been physically stored on the hard disk of computer used by YOUR agents, employees, officers, independent contractors, or representatives.
2.  ANY or EACH shall include and encompass ALL and EVERY.
3.  The terms RELATE or RELATING TO include referring to, alluding to, responding to, regarding, discussing, showing, describing, reflecting, analyzing, constitution, including, mentioning, in respect of, or about.
4.  If any document which is responsive to the request for documents is kept electronically, it should be produced in its native format, along with any software necessary to use the document.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

Request Number One:

Any and all Documents which relate to Green Oasis Limited Partnership's [hereinafter GOLP]

acquisition of the property located at 532-536 Green Street, San Francisco, CA.

Request Number Two:

Any and all Documents which relate to GOLP's ownership of any property, or interest in

property.

Request Number Three:

Any and all Documents which relate to GOLP's transfer of any interest in GOLP, including partnership transfer from 2006 to present.

Request Number Four:

Any and all Documents which relate to GOLP's transfer of any property from 2006 to present.

Request Number Five:

Any and all Documents which relate to GOLP'S transfer of interest to PACIFIC GOLDEN ASIA.

Request Number Six:

Any and all Documents which relate to GOLP's relationship with Pacific Golden Asia since 2006.

Request Number Seven:

Any and all Documents which relate to  GOLP's records related to Pacific Golden Asia since 2006.

Request Number Eight:

Any and all Documents which relate to GOLP's records relationship with Richard Tom since 2006.

Request Number Nine:

Any and all Documents which relate to GOLP's records related to its relationship with Richard Tom since 2006.

Request Number Ten:

Any and all Documents which relate to GOLP's property management of any real property which it owns or has managed since 2006.

Request Number Eleven:

Any and all Documents which relate to GOLP's records related to property of any real property which it owns or has managed since 2006, including but not limited to contracts for property management, payments for property management, scope and tasks of management, changes in property management, costs of property management, leases, efforts taken to lease property,

relationships with realty companies, lawsuits and/or any other record related to any real property which GOLP owns or manages.

Request Number Twelve:

Any and all Documents which relate to GOLP's relationship with Justin Tom since 2006.

Request Number Thirteen:

Any and all Documents which relate to GOLP's records related to Justin Tom, including but not limited to employment, scope of employment, lawsuits over management, payments to Justin Tom or anyone whom Justin Tom directed payment to, and/or any communications with Justin Tom.

Request Number Fourteen:

Any and all Documents which relate to GOLP's partnership documents, partner meetings, partner communications, emails, tax documentation, profit and loss records, financial records, financial reporting to partners, tax preparers, accountants, bookkeepers, or other financial recordkeepers.

Request Number Fifteen:

Any and all Documents which relate to Any monies paid to Justin Tom by GOLP.

Request Number Sixteen:

Any and all Documents which relate to GOLP's records of any monies paid to Justin Tom by GOLP or anyone.

Request Number Seventeen:

Any and all Documents which relate to any monies paid to Richard Tom by GOLP.

Request Number Eighteen:

Any and all Documents which relate to GOLP's record of any monies paid to Richard Tom by GOLP.

Request Number Nineteen:

Any and all Documents which relate to any monies paid to Garrett Tom by GOLP.

Request Number Twenty:

Any and all Documents which relate to GOLP's record of any monies paid to Garrett Tom by GOLP.

Request Number Twenty-One:

Any and all Documents which relate to GOLP's record of any monies paid on behalf of Richard Tom by GOLP, including any payments for Richard Tom's household expenses, legal expenses, boats, cars, medical expenses, professional expenses, payments to Mr. Wiseman, payments for bookkeepering, accounting, tax preparation or payment of any other type.

Request Number Twenty-two:

Any and all Documents which relate to GOLP's records of any monies paid on behalf of Richard Tom by GOLP, including any payments for Richard Tom's household expenses, legal expenses, boats, cars, medical expenses, professional expenses, payments to Mr. Wiseman, payments for bookkeepering, accounting, tax preparation or payment of any other type.

Request Number Twenty-three:

Any and all Documents which relate to GOLP's records of any monies paid on behalf of Garrett Tom by GOLP, including any payments for education, school, health care, books, daily expenses of any kind, housing, summer camp, or any payment of any kind.

Request Number Twenty-four:

Any and all Documents which relate to GOLP's records of any monies paid to Winnie Jiang, including any payments for household expenses, legal expenses, boats, cars, medical expenses, professional expenses, payments for bookkeeping, accounting tax preparation or payment of any type.

Request Number Twenty-five:

Any and all Documents which relate to GOLP's financial records, including bank records, accounts receivable, accounts payable, check book or any other financial record.

Request Number Twenty-six:

Any and all Documents which relate to GOLP's payment of any kind to anyone.

Request Number Twenty-seven:

Any and all Documents which relate to GOLP's relationship to the Moon Trust, including but not limited to any payments, receipt of any monies, communications, emails, or any other thing.

<u>Request number Twenty-eight</u>:

Any and all Documents which relate to GOLP's relationship with any other member of any business or person related to or involved with Richard Tom, Winnie Jiang, Garrett Tom, or any other relation of Richard Tom of any kind.

<u>Request Number Twenty-Nine</u>:

Any and all Documents which relate to Any documents, communications, payments made or received from or to the Moon Irrevocable Trust.

<u>Request Number Thirty</u>:

ANY DOCUMENTS which RELATE to the transfer of any INTEREST of Richard Tom in any entity, including but not limited to PACIFIC GOLDEN ASIA, LLC.

<u>Request Number Thirty-One</u>:

ANY DOCUMENTS which RELATE to the transfer of any INTEREST of Richard Tom in any entity, including but not limited to Green Oasis, LP.

<u>Request Number Thirty-Two</u>:

ANY DOCUMENTS which RELATE to the transfer of any INTEREST in Green Oasis, LP.

# EXHIBIT 2

# ESSENTIAL LAW GROUP, PC

548 MARKET STREET, PMB 48752
SAN FRANCISCO, CA 94104

CHARLIE W. YU
CYU@ESSENTIALLAWGROUP.COM

TEL: (415) 349-5180
FAX: (415) 349-5181

March 24, 2022

*VIA EMAIL TO dan_sondheim@canb.uscourts.gov*

The Honorable Hannah L. Blumenstiel
United States Bankruptcy Court for the Northern District of California
450 Golden Gate Avenue, Courtroom 19
San Francisco, CA 94102

Re:     In re: Richard Tom; Wong et al. v. Tom, Adv. Proc. No. 19-3065-HLB

Dear Judge Blumenstiel:

I represent non-parties Green Oasis Limited Partnership ("GOLP") and Pacific Golden Asia ("PGA"). Ms. Kenesha Fudge is the person most knowledgeable ("PMK") for GOLP and PGA.

## Response to Plaintiffs' Letter dated March 18, 2022 (Dkt. 67)

I understand that Plaintiffs are attempting to subpoena Ms. Fudge as the Trustee of the Moon Irrevocable Trust, and I will accept service of the subpoena on behalf of Moon Irrevocable Trust. I would also like to address misrepresentations in Plaintiffs' counsel's letter to the Court. First, Plaintiffs' allegation that Ms. Fudge is attempting to evade service is false. Ms. Fudge has appeared for three days of depositions, testified to where she is residing, and there is no reason for her to evade service. Second, Plaintiffs' allegation that "Debtor transferred his interest in GOLP to other entities, *including but not limited to the Moon Irrevocable Trust*" is false. Mr. Justin Tom, whose interest is not at issue in this action, transferred his interest to the Moon Irrevocable Trust. Mr. Richard Tom's 50% interest was transferred as follows: (1) 32% to Winnie Jiang; (2) 14% to God's Grace Irrevocable Trust; and (3) 4% to Giovanni Torocca. Mr. Richard Tom did not transfer any interest to Moon Irrevocable Trust.

## Response to Plaintiffs' Letter dated March 21, 2022 (Dkt. 68)

I understand that Plaintiffs are attempting to have GOLP and PGA designate a new PMK. As to PGA, my understanding is that Ms. Fudge is currently the sole member of PGA and that Pioneer Network, Ltd., while originally listed as a member, has no involvement in PGA, has never had any involvement in PGA, and is otherwise not a current member. Ms. Fudge is the only person available to testify as the PMK for PGA.

As to GOLP, my understanding is that Ms. Fudge manages GOLP through PGA and that PGA took over management of GOLP as the general partner in 2016 from Mr. Justin Tom. GOLP has one asset, 532-536 Green Street, San Francisco, California, that consists of one commercial unit and four residential units. GOLP owns and manages the property.

Ms. Fudge is the PMK for GOLP. The issue is Ms. Fudge is suffering from long Covid. Ms. Fudge has significant health issues, including breathing issues and memory issues, and when Ms. Fudge is questioned for a prolonged period of time, she suffers from an excessive heart rate and breathing issues and essentially shuts down. Ms. Fudge is able to sit through an hour or an hour and a half of deposition and provide good testimony before her health issues are triggered and she gets flustered and defaults to a "I do not recall" response. If there is a video recording of the deposition, the Court will have a good understanding of what is going on during the depositions and Ms. Fudge's health issues. I have done my best to prepare Ms. Fudge for the depositions, however, in her current state, Ms. Fudge does not make the best deponent because of her health issues – not because of an inappropriate designation.

I provided Plaintiffs' counsel with a doctor's note dated February 11, 2022 from Dr. Lisabeth Williams, MD, which states that "Due to continuing health issues from COVID-19 infection, Kenesha Fudge will not be able to sit through a deposition." Despite this note, GOLP and I decided to move forward with the depositions because we did not want to be accused of delay, although I provided Plaintiffs' counsel the circumstances of Ms. Fudge's health issues and offered to delay the deposition, which was declined. Plaintiffs' counsel called Dr. Lisabeth Williams's office and confirmed for herself that Ms. Fudge is having continuing health issues from COVID-19, and that in addition to this note, that Ms. Fudge also received notes that she was not able to work. Plaintiffs' counsel has witnessed Ms. Fudge's health issues firsthand and I do not believe Plaintiffs' counsel disputes that Ms. Fudge is actually suffering from ongoing health issues.

During deposition, Plaintiffs' counsel and I even had a discussion regarding Ms. Fudge's health issues. Plaintiffs' counsel wondered why I was allowing my client to continue the deposition despite her health issues and difficulty breathing, and I indicated that GOLP and PGA did not want to be accused of gamesmanship or delay. Plaintiffs' counsel stated that she could clearly see Ms. Fudge struggling, that she was sympathetic to Ms. Fudge, and we agreed that it would be best to complete the GOLP and PGA depositions in spurts to get the best testimony.

Given Ms. Fudge's health issues, I agree and appreciate that taking GOLP's deposition has been tedious and frustrating. It has been frustrating for Plaintiffs, it has been frustrating for me, and it has been frustrating for Ms. Fudge.

With this context, Plaintiffs have cherry picked the deposition transcript during Ms. Fudge's "I do not recall" moments. At other times, Ms. Fudge responded to the same questions without issue. As for what Ms. Fudge does for GOLP, Ms. Fudge testified that she negotiates and executes the leases, ensures rent is paid, pays the bills, and that the tenants contact her for maintenance issues, among other things. Ms. Fudge testified that rent is automatically deposited so she does not personally collect the rent, and that Richard Tom helps with the repair and maintenance of the property at her direction. Depending on when you ask Ms. Fudge the question, sometimes she is able to recall and sometimes she is not able to recall. The fact that Ms. Fudge has a difficult time recalling certain things at certain times due to Covid does not detract from the fact that Ms. Fudge is the PMK. I agree and appreciate that it makes the

deposition process tedious and frustrating, but that is just the situation we are in. Again, Plaintiffs have cherry picked the deposition transcript during Ms. Fudge's "I do not recall" moments, Ms. Fudge has answered the same questions fully and without issue at other times.

GOLP and PGA have produced its tax returns, bank statements, leases, bills, loan documents, corporate documents, etc. GOLP and PGA did not object to any subpoena of its records. GOLP and PGA are not attempting to obfuscate discovery in any manner. I wish I had a better deponent to work with. I wish Ms. Fudge's health was better and her memory was better. I wish she would be able to calm down when her heart starts racing and to stop and think and answer the question rather than default to a "I do not recall" response. However, the fact is that Ms. Fudge has a hard time recalling what happened yesterday or the day before, not because she is being evasive or does not actually know the answer, but because she is suffering from significant health issues.

As to Plaintiffs three requests. First, Ms. Fudge is the PMK for GOLP and PGA. Ms. Fudge has in fact responded to the questions which Plaintiffs claim Ms. Fudge did not know the response to, it was just a matter of timing and Ms. Fudge's health condition at the time of the question. The earlier in the deposition, the better Ms. Fudge is able to recollect something. As the deposition continues, Ms. Fudge's health issues are triggered, she loses concentration and focus, her heart rate increase, she gets flustered, and defaults to a "I do not recall" response.

Second, GOLP and PGA does not oppose Plaintiffs request for additional time to conduct discovery and agrees to appear for deposition until the depositions are complete. GOLP and PGA appreciates that Mr. Richard Tom might take a different position, however, GOLP and PGA do not oppose the request for additional time. Again, GOLP and PGA appreciates that the deposition process has been tedious and frustrating and will take longer the normal to complete.

Third, sanctions are not warranted. Ms. Fudge, despite being sick, has continued to appear for her depositions. During the depositions, neither Ms. Fudge nor I requested to end the deposition due to her health issues. In fact, each time it was Plaintiffs' counsel who suggested we end the depositions due to Ms. Fudge's health conditions. Moreover, to the extent Plaintiffs believed that the document production was deficient, we have supplemented the production to provide Plaintiffs the requested documents. Plaintiffs have not stated to me that our current production is deficient in any manner. I even requested that Plaintiffs' counsel let me know what specific documents she believes are lacking and Plaintiffs' counsel did not do so.

Ms. Fudge is the PMK for GOLP and was not improperly designated. Ms. Fudge has identified herself as the PMK for GOLP. Mr. Metzger, Richard Tom's counsel, has identified Ms. Fudge as the PMK for GOLP. Ms. Fudge signed my retainer agreement on behalf of GOLP. Ms. Fudge testified that she handles the leases, ensures rent is paid, pays the bills, and is the contact person for repairs, and is otherwise the person currently responsible for the categories listed on GOLP's subpoena.

Ms. Fudge has not refused to appear as the PMK for PGA so it is unclear what the "non-production of Ms. Fudge as the PMK for PGA" means. There is a lack of documents for PGA

because those documents do not exist. PGA produced its corporate documents and tax returns, but otherwise does not have other documents. PGA is a one woman show and does not even have a bank account or separate email address.

In December, Ms. Fudge was still suffering from Covid and was under doctor care and informed me she would not be able to gather all the documents and sit through a deposition before the end of December. Ms. Fudge was seeking active treatment on at least December 3, 6, and 9 for Covid and provided me medical records for these dates. There may be other dates I am not aware of. Plaintiffs' counsel reviewed the doctor's note stating that Ms. Fudge is unable to sit through a deposition, verified the note with Ms. Fudge's medical provider, has seen Ms. Fudge's health issues firsthand, and based on those health issues Plaintiffs' counsel has ended the depositions early. To suggest that Ms. Fudge was not sick in December is false. Yes, Ms. Fudge traveled to visit family over Christmas in December, however, that does not mean she was able to sit through a deposition, when Plaintiffs' counsel knows that Ms. Fudge cannot sit through a deposition even now.

The bottom line is Ms. Fudge is the PMK for GOLP and PGA, she just does not have the current capacity to sit through an entire deposition and answer questions, the depositions must be done in parts. Plaintiffs' counsel and I agreed to this, and GOLP and PGA have no issues doing the depositions in spurts so that Plaintiffs can get the best responses possible. In the alternative, GOLP and PGA are willing to answer interrogatories under oath. There has been no obstruction. Plaintiffs' counsel has a consistent practice of creating damned if you do and damned if you don't situations and taking things out of context to suit her purpose, which is why GOLP and I have decided to move forward with the depositions despite Ms. Fudge's health issues and continue with the depositions despite Ms. Fudge struggling through the depositions.

GOLP was formed with 50% interest from Mr. Richard Tom and 50% interest from Mr. Justin Tom. Mr. Richard Tom's 50% interest was transferred as follows: (1) 32% to Winnie Jiang; (2) 14% to God's Grace Irrevocable Trust; and (3) 4% to Giovanni Torocca. Mr. Justin Tom's interest was transferred as follows: (1) 49% to Moon Irrevocable Trust; and (2) 1% to PGA. Plaintiffs have all of GOLP's tax returns and bank statements that shows what comes in and what goes out. Plaintiffs are free to subpoena all of GOLP's tax returns and bank records and GOLP will not object. To the extent Plaintiff "needs to conduct discovery toward those entities related to the transfer and related to the value of those entities, so that Plaintiff can show the value of the fraudulent transfers at issue in the nondischargeability case," Plaintiffs have this information. Admittedly, I do not generally practice in federal court or bankruptcy court, but I am not sure why the depositions are even necessary for this nondischargeability case because my understanding is that Plaintiffs know of the transfers and the financials, i.e. value, can be determined through the tax returns and bank statements. Nonetheless, GOLP and PGA will continue participating the depositions.

I am a sole practitioner and I informed Plaintiffs' counsel that I have two trials in April, one starting April 1 and another starting April 13, so I have no bandwidth to continue defending the depositions until May. I was retained back in November 2020 to defend the depositions of

GOLP and PGA and I assumed it would last me two days and be an easy assignment.
Unfortunately, that has not turned out to be the case.

Sincerely,

*Charlie Yu*

Charlie W. Yu

# EXHIBIT 3

Samuel Ray (SBN 308921)
Luke Garvey (SNB 342956)
Colla & Ray LLP
1561 Powell Street
San Francisco, CA 94133
415-579-1414
sam@collaray.com
**Attorneys for Plaintiff**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

UNLIMITED JURISDICTION

| | |
|---|---|
| GREEN OASIS LP, a California Limited Partnership, | Case No.: CGC-20-586069 |
| Plaintiff, | **PLAINTIFF GREEN OASIS, LP'S TRIAL BRIEF** |
| vs. | |
| ASMEROM GHEBRMICAEL, an individual, and DOES 1-50, inclusive, | |
| Defendants. | |

     Plaintiff GREEN OASIS LP ("Plaintiff") submits this Trial Brief to assist the Court in the trial of the above-entitled action.

## **INTRODUCTION**

     This is a simple case. Plaintiff seeks damages from Defendant Asmerom Ghebrmicael ("Defendant") for the breach of the commercial lease agreement for the commercial property located at 532 Green Street, San Francisco, CA 94133 (the "Property") based on Defendant's nonpayment of rent. Defendant does not contest that he failed to pay rent for the months at issue.

Instead, Defendant raises a variety of irrelevant and unsupported affirmative defenses. To date, Defendant has failed to meaningfully respond to Plaintiff's discovery and has also failed to comply with this Court's Order compelling that Defendant provide further discovery responses. Plaintiff has filed eleven motions *in limine* is address a variety of trial issues, including a motion *in limine* to preclude Defendant from calling witnesses or introducing evidence that would be otherwise responsive to Plaintiff's discovery requests.

## STATEMENT OF FACTS

At trial, Plaintiff intends to call Richard Tom as a witness. Richard Tom acts as the Property's manager and is Plaintiff's agent. Richard Tom will testify as follows: Plaintiff is the owner of the Property. On July 15, 2015, Defendant entered into a commercial lease agreement whereby Defendant leased the Premises for ten years, with two ten-year options ("Agreement" or "Lease"). (Plaintiff's Trial Exhibit ("Exh.") 1.) According to the Lease, the lessor was "Gods Grace Irrevocable Trust or to be determined (TBD) upon discretion of appointed trustee." (Exh. 1.) Shortly after executing the Lease, God's Grace Irrevocable Trust assigned the Lease to Plaintiff.[1] Defendants were aware of this assignment as they paid the Monthly to Plaintiff and added Plaintiff as a certificate holder under their general commercial liability insurance. (Exh. 2; Exh. 3).

Pursuant to the Lease, Defendant agreed to pay a monthly base rent of $5,500 ("Monthly Rent"), with two percent (2%) annual increases beginning on July 1, 2017. (Exh. 1.) Defendant also agreed that it would pay a late fee of one hundred dollars ($100) for each month that

---

[1] For the purposes of clarity, God's Grace Irrevocable Trust is also the managing partner of Plaintiff Green Oasis, LP.

PLAINTIFF GREEN OASIS, LP'S TRIAL BRIEF - 2

Defendant was more than five (5) days late on paying monthly rent. (Exh. 1.) Defendant also promised to pay all utilities, including garbage removal services at the Property. (Exh. 1.) Finally, Defendant agreed to pay Plaintiff's attorney's fees, in the event that Plaintiff was the prevailing party in an action resulting from a breach of the Agreement. (Exh. 1.)

Beginning in April 2020, Defendant stopped paying his monthly rent for the Property.[2] After Defendant failed to pay rent, Plaintiff repeatedly reached out to Defendant and offered Defendant the opportunity to enter into a rental forbearance agreement. (Exh. 4.) Specifically, Plaintiff repeatedly emailed Defendant, requesting that the parties "resolve this matter in an amiable way" and informing Defendant as to various options with respect to pandemic related rental relief programs. (Exh. 4.) Instead of working with Plaintiff, Defendant ignored Plaintiff's attempts to compromise and offers of rental forbearance and ceased all communications. (Exh. 4) Notably, Defendant admits that it stopped paying rent and also admits that he made no effort to enter into a rent forbearance agreement. (Exhs. 11, 12, 14, and 15.)

In addition to ceasing rental payments, Defendant also stopped visiting Property, such that Plaintiff believed that Defendant had abandoned the Property. This included the time period that all other restaurants in the neighborhood had built parklets and reopened for dine-in customers. As such, on October 1, 2020, Plaintiff served Defendant with a Notice of Belief of Abandonment ("Notice of Abandonment") pursuant to California Civil Code section 1951.3. (Exh. 5.) Defendant did not respond to Plaintiff's Notice of Abandonment and thus surrendered possession of the Property on October 21, 2020 ("Surrender Date").

---

[2] In additional to not paying, rent, Defendant also stopped paying utilities, including the garbage bill, resulting in the utilities becoming delinquent. (Exh. 3.)

As of the Surrender Date, Defendant had failed to pay the following rent payments:

- April 2020 - $5,837.00

- May 2020 - $5,837.00

- June 2020 - $5,837.00

- July 2020 - $5,953.00

- August 2020 - $5,953.00

- September 2020 - $5,953.00

- October 2020 (prorated) - $3,841.00

At the time Plaintiff regained possession of the Property, Defendant owed $39,211.00 in rent plus $800 in late payment penalties. After the Surrender Date, Plaintiff immediately began attempts to re-rent the Property in order to mitigate damages. Plaintiff was able to enter a new lease agreement for the Property beginning in January 2021, for a monthly rent of $5,400.00, which is $553.00 less than the monthly rent due under Plaintiff's Agreement with Defendant.

## ANALYSIS

### I.  Defendant Breached the Agreement by Failing to Pay Rent to Plaintiff.

Breach of contract requires the existence of a valid contract, the plaintiff's performance or excuse therefrom, defendant's breach, and damages to the plaintiff resulting from the breach. (*Acoustics, Inc. v. Trepte Constr. Co.* (1971) 14 Cal.App.3d 887, 913 (*citing* 2 Witkin, Cal. Procedure (1954) Pleading, § 251, p. 1226).) Neither side disputes the fact that the Lease was a valid contract. Furthermore, Plaintiff performed all of its obligations under the Agreement. Critically, Defendant admits that he failed to pay rent for the months at issue and also admits that he rebuffed Plaintiff's attempt to negotiate a forbearance agreement. (Exhs. 11, 12, 14, and 15.) As fully detailed below, Plaintiff has been damaged by Defendant's breach of the Agreement.

PLAINTIFF GREEN OASIS, LP'S TRIAL BRIEF - 4

## II. Defendant Should Be Barred From Asserting Affirmative Defenses.

As a threshold issue, Defendant raised numerous affirmative defenses in his answer, but refused to respond to Form Interrogatory 15.1, which called for Defendant to provide additional information about his asserted affirmative defenses. (Exh. 14; Exh. 15.) As such, the Court recently granted Plaintiff's motion to compel and has sanctioned Defendant for his misuse of the discovery process. (Exh. 16.) Despite an order from this Court, Defendant has continued to refuse to respond to Form Interrogatory 15.1 and has not provided further responses (in direct violation of the Court's order). Defendant should thus be preceded from introducing evidence or calling witnesses in support of its baseless and unsupported affirmative defenses.

## III. Defendant's Affirmative Defenses Are Meritless

### a. Frustration of Purpose Does Not Apply Because the Purpose of the Agreement Has Not Been Frustrated for Either Party.

The doctrine of frustration of purpose is applicable when "[p]erformance remains entirely possible, but the whole value of the performance to one of the parties at least, and the basic reason recognized as such by *both* parties, for entering into the contract has been destroyed by a supervening and unforeseen event." (Williston on Contracts, (rev. ed., vol. 6, p. 5419) (emphasis in original).) "In order that the defense of frustration be applicable it is not sufficient that the purpose or 'desired object' of one of the parties to the contract has been frustrated. The purpose or 'desired object' of both parties must have been frustrated." (*Brown v. Oshiro* (1945) 68 Cal.App.2d 393, 397.) "Even more clearly with respect to leases than in regard to ordinary contracts the applicability of the doctrine of frustration depends on the total or nearly total destruction of the purpose for which, in the contemplation of both parties, the transaction was entered into." (*Lloyd v. Murphy* (1944) 25 Cal.2d 48, 53.)

In this case, the frustration of purpose doctrine is inapplicable because the Lease has not been frustrated for either party. Namely, Defendant entered into the Lease for the purpose of operating a restaurant. While there was a short period of time where San Francisco restaurants could not open for dine in customers, restaurants were deemed "essential businesses" throughout the pandemic and were never mandated to completely shut down for carry out and delivery orders. Further, by late May, San Francisco restaurants were permitted to construct outdoor dining structures, known as "parklets" via San Francisco Mayor London Breed's "Shared Spaces Program." (Exh. 21.) In fact, the Plaintiff will present evidence that nearly every restaurant on the block where the Property is situated constructed parklets and reopened for dine-in business by late May 2020. (Exh. 8; Exh. 21.) As such, while Defendant may claim that he was forced to close during the pandemic, this by choice, not forced closure.

Further, during the Covid-19 Pandemic, the San Francisco Board of Supervisors passed several ordinances aimed at assisting small businesses and landlords as they navigated the unprecedented public health crisis. (Exh. 24.) These ordinances were enumerated within Chapter 37C of the San Francisco Administrative Code, titled "Eviction Protections for Commercial Tenants During Covid-19 Pandemic" ("Chapter 37C"). (Exh. 24.) Chapter 37C created an eviction moratorium for commercial tenants but only applies to legal actions to recover possession of commercial property, and thus not applicable to civil actions for money. (Exh. 24.) Moreover, Chapter 37C is expressly predicated on both parties negotiating in good faith to enter into a written rent forbearance agreement. (Exh. 24.) Here, Plaintiff repeatedly attempted to negotiate a forbearance agreement, but Defendant refused to negotiate in good faith (or at all). (Exh. 4.) As such, Chapter 37C is inapplicable here.

### b. There is No Force Majeure Clause in the Agreement, so This Defense is Inapplicable.

"Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation." (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821; citing Code Civ. Proc § 1636.) This intent is to be inferred entirely from the written provisions of the contract. (Code Civ. Proc. § 1639.) Further, "parties to a commercial lease tend to be sophisticated and are more likely to have equal bargaining power." (*Hilaly v. Allen* (2019) 36 Cal.App.5th Supp. 12, 30; <u>see</u> *Boston LLC v. Juarez* (2016) 245 Cal.App.4th 75, 84–85.)

Since the Agreement in question between Plaintiff and Defendant was a commercial lease agreement, they had relatively equal bargaining power. (<u>See</u> *Hilaly, supra,* 36 Cal.App.5th Supp. at 30.) Moreover, it should be presumed that the Agreement contained all provisions that the parties mutually intended to include. The ability to rely on *force majeure* is entirely dictated by the express language of the agreement. As there is no *force majeure* clause in the Agreement, this defense is not available to Defendant.

## DAMAGES

As discussed above, at the time Plaintiff regained possession of the Property, Defendant owed **$40,011.00** in rent and late payment penalties. Additionally, pursuant to California Code of Civil Procedure section 1951.2, Plaintiff is entitled to seek the balance of the unpaid rent for the remainder of the lease term offset by the loss that can be reasonably avoided. Plaintiff made reasonable, good faith efforts to re-rent the Property, and was able to enter a new lease agreement for the Property beginning in January 2021. Thus, Plaintiff did not receive rent for the months of November and December. Additionally, despite Plaintiff's best efforts, it was only able to lease the Property to a new tenant for $5,400.00 per month, which is $553.00 less than was due under

Case: 19-03065    Doc# 156    Filed: 09/14/22    Entered: 09/14/22 17:53:09    Page 32 of 35

the Agreement with Defendant. As such, since the Agreement was not set to expire until June 30, 2025, Defendant owes at least an additional **$58,460,** which is the amount Plaintiff would have earned after termination, less the value that Plaintiff has received and will receive from the new tenant. **Thus, in total, Plaintiff's damages as a result of Defendant's breach amount to at least $98,471.00.** Further, per the Lease, Plaintiff is entitled to receive its attorneys' fees in this matter.

## CONCLUSION

This is a simple case. The evidence will show that Plaintiff and Defendant had a commercial lease agreement. Defendant failed to pay rent and rebuffered Plaintiff's attempts to enter into a forbearance agreement. Further, Defendant flouted established discovery rules as well as the orders of this Court. Therefore, Defendant should be prohibited from raising its affirmative defenses, which are unsubstantiated, inapplicable, and meritless. As such, the evidence in this trial will show that Defendant breached the Lease and accordingly owes Plaintiff damages predicated on Defendant's breach.

Dated: August 9, 2022          /s/Samuel Ray

                              Samuel Ray
                              COLLA & RAY LLP
                              Attorneys for Plaintiff

# EXHIBIT 4

Samuel Ray (SBN 308921)
Luke Garvey (SBN 342956)
Colla & Ray LLP
1561 Powell Street
San Francisco, CA 94133
415-579-1414
sam@collaray.com
**Attorneys for Plaintiff**

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

UNLIMITED JURISDICTION

| | |
|---|---|
| GREEN OASIS LP, a California Limited Partnership, | Case No.: CGC-20-586069 |
| Plaintiff, | **PLAINTIFF GREEN OASIS LP'S WITNESS LIST** |
| vs. | |
| ASMEROM GHEBRMICAEL, an individual, and DOES 1-50, inclusive, | |
| Defendants. | |

Plaintiffs propose to call the following witnesses at trial. Because the facts are still under investigation, Plaintiffs reserve the right to add additional witnesses as more facts become known:

| **Witness** | **Estimated Length of Testimony** |
|---|---|
| Richard Tom | Two (2) Hours |
| Asmerom Ghebremicael | Two (2) Hours |
| Nicholas Colla | One (1) Hour |

Dated: August 9, 2022        /s/ Samuel Ray

SAMUEL RAY, ESQ.
COLLA & RAY LLP
Attorneys for Plaintiffs

1